UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT EUNGARD,

    Plaintiff,

v.

    Case No. 05-60272

    Hon. John Corbett O'Meara

OPEN SOLUTIONS, INC.,

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the court are Plaintiff's motion for partial summary judgment, filed June 29, 2006, and Defendant's motion for summary judgment, filed August 7, 2006. Both motions are fully briefed. The court heard oral argument on September 21, 2006, and took the matter under advisement. For the reasons stated in this opinion, the court grants Defendant's motion and denies Plaintiff's motion.

## BACKGROUND FACTS

Plaintiff, Scott Eungard, filed suit against Defendant, Open Solutions, Inc., alleging breach of contract and violations of the Michigan Sales Representative Act. Plaintiff contends that Defendant failed to pay him commissions he was owed after his termination from employment. Plaintiff was employed as an Area Vice President for Open Solutions. His job responsibilities included selling computer software and hardware to financial institutions in the Great Lakes region. He received a salary and commissions on sales.

Plaintiff began his employment with Open Solutions in July 2003, when the company

acquired his former employer. Open Solutions terminated Plaintiff's employment on July 2, 2004, for poor performance. Open Solutions alleges that Plaintiff failed to make any sales during the year before his termination. Plaintiff contends, however, that he procured or assisted in procuring two clients for Open Solutions, and that he is entitled to commissions on those sales. Plaintiff does not contend that Open Solutions discharged him in order to avoid paying his commissions.

Plaintiff asserts that he began attempting to land a contract with AurGroup Financial Credit Union in November 2003. As of June 2004, however, there was still no deal. AurGroup joined forces with CINCO Family Financial Center Credit Union, an existing Open Solutions customer, to form Shared Resource Technology Group ("SRTG"). Another Open Solutions employee, Kelly Bannevans, was responsible for upgrading the CINCO contract, and Plaintiff and Bannevans were supposed to share responsibility for obtaining a contract with SRTG.

In late June 2004, Plaintiff, Bannevans, and Mark Roberson met with Mark Wintzinger, AurGroup's CIO and SRTG's CEO, with the hope of obtaining contracts with AurGroup, CINCO, and SRTG. Open Solutions hoped to close a deal by June 30, 2004, the end of the second quarter, but after several days of meetings the parties could not reach agreement. Plaintiff testified that "Mark Roberson at one point was just pretty upset that things had not come off as planned. And so at that point he basically tossed the contract across the table with the ink pens on top of the contract and looked at Mark Wintzinger and basically just kind of threw up his hands, told him to execute the agreement and attach a check and send it to Open Solutions and see what happens from there. That's really the way it was kind of left." Pl.'s Dep. at 121, 127. Wintzinger refused to sign; and when the meeting ended negotiations appeared permanently

-2-

stalled.

On July 1, 2004, Plaintiff received a call from his supervisor, George McGourty. McGourty asked Plaintiff to meet with him on July 2.  At the July 2 meeting, McGourty terminated Plaintiff's employment for poor sales performance.

In the meantime, Defendant alleges that Roberson and Bennevans continued to negotiate with Wintzinger on July 1 and 2, 2004.  According to Open Solutions, the AurGroup and SRTG contracts were finalized and signed late in the day on July 2, 2004.  (The contracts were dated June 30, 2004, by AurGroup and SRTG.)  The agreements were signed and dated by Open Solutions, and are effective, as of July 6, 2004. See Pl's Exs. D, F (filed under seal).

The payment of commissions by Open Solutions is governed by the Open Solutions 2004 Area Vice President Sales Commission Plan.  Def.'s Ex. 2 (signed by Plaintiff).  The plan provides:

> Commissions will be paid as follows:
> - Commissions will be calculated on the commissionable Agreement value, then paid over the following schedule:
>   - 50% in the month following the Agreement signing
>   - the remaining 50%, in the month following conversion.
> - To the extent the earned amounts exceed any outstanding amount owed to Open Solutions, payment will be made to the respective Area Vice President on the 30th of each month following the earned activity.

Def.'s Ex. 2 at 1.  The commission plan also provides that

> If an Area Vice President's employment with Open Solutions is terminated, either voluntarily or involuntarily, all of the employee's <u>closed orders as of their termination date</u> will be reviewed for calculation of commission payments <u>based on their status as of that date</u>.  If there is any outstanding amount owed to Open Solutions, the commission due will be reduced by any such amount outstanding.  <u>Only the amount due at termination will be paid</u>.  <u>No additional amounts will be paid after termination.</u>

-3-

Def.'s Ex. 2 at 3 (emphasis added).

Open Solutions contends that Plaintiff is not entitled to commissions on either the AurGroup or SRTG contracts, because the agreements were not finalized and signed until after Plaintiff's termination. In order to "avoid litigation," however, Open Solutions paid Plaintiff the first 50% of the commission on the AurGroup account, which was approximately $11,000. Open Solutions argues that Plaintiff is not entitled to the second 50% commission, because it would not have been due to Plaintiff until the project "went live," which was several months after his termination. Open Solutions also contends that Plaintiff is not entitled to any commission on the SRTG account, which it maintains was procured solely by Kelly Bannevans. Bannevans received the total SRTG commission (both parts) in the amount of $3600.

## LAW AND ANALYSIS

Plaintiff seeks to recover commissions on theories of breach of contract, breach of implied contract, procuring cause doctrine, and a violation of the Michigan Sales Representatives' Commissions Act.

### I. Breach of Contract

The payment of commissions is governed by the Open Solutions commission plan, signed by Plaintiff. See Clark Bros. Sales Co. v. Dana Corp., 77 F. Supp. 2d 837 (E.D. Mich. 1999); M.C.L. § 600.2961 ("The terms of the contract between the principal and sales representative shall determine when a commission becomes due."). Under the commission plan, Plaintiff is entitled to commissions on "closed orders" as of his termination date, "based on their status as of that date." The plan also provides: "Only the amount due at termination will be paid. No additional amounts will be paid after termination."

Open Solutions argues that the AurGroup and SRTG contracts were not "closed orders" as of Plaintiff's termination date and, therefore, Plaintiff is not entitled to any commission on these accounts. Open Solutions did pay the first 50% commission on the AurGroup account to Plaintiff, leaving only the second 50% of the AurGroup commission and the SRTG commission at issue.

With respect to the SRTG account, Open Solutions argues that Plaintiff played no role in "procuring" the SRTG contract and that it was procured solely by Kelly Bannevans. See Def.'s Ex. 6 at ¶ 4 (Affidavit of Mark Wintzinger). Plaintiff testified, however, that he and Bannevans worked together to procure the SRTG contract. Def.'s Ex. 12 at 102 (Pl's Dep.)

Given this factual dispute, for the purpose of this motion, the court will assume that Plaintiff had a role in procuring the SRTG contract. The issue is whether Plaintiff was entitled to a commission on the SRTG contract under the terms of the commission plan. (It appears that the commission would have been shared with Bannevans.) The testimony from Wintzinger and Roberson is that the SRTG and AurGroup contracts were not finalized until late in the day on July 2, 2004, despite being dated by SRTG and AurGroup on June 30, 2004. AurGroup and SRTG cut checks to Open Solutions on July 2, 2004. Open Solutions signed the agreements on July 6, 2004, and their effective dates are July 6.

Plaintiff was no longer involved in contract negotiations after June 30 and was terminated early in the day on July 2. As of the time of Plaintiff's termination, the undisputed testimony is that the agreements were not yet finalized or signed. The commission plan allows for commissions on "closed orders" as of the employee's termination date. Although the plan does not define "closed orders," logic suggests that an order is not "closed" until the parties have

an agreement, which does not occur until the agreement is fully executed. It appears, therefore, that the SRTG order was not "closed" as of Plaintiff's termination date and that he was not entitled to that commission under the plan. This conclusion is supported by Plaintiff's testimony:

> Q: Would you agree with me that under the terms of the compensation plan that if there is no contract in place at the time you are terminated that you don't earn any commission?
>
> * * *
>
> A: I would agree.

Pl's Dep. at 111-12.[1] Accordingly, the court finds that Open Solutions did not breach the commission plan by failing to pay Plaintiff a commission for the SRTG order.

As for the AurGroup account, the only open question is whether Plaintiff was entitled to the second 50% commission. Under the commission plan, the second 50% commission is paid "in the month following conversion," or when the customer begins using the Open Solutions product. See Def.'s Ex. 1 at ¶ 20 (Affidavit of George McGourtry); Ex. 3 at ¶ 21 (Affidavit of Mark Roberson). The AurGroup account "went live" in April 2005, well after Plaintiff's termination in July 2004. See Def.'s Ex. 7 at ¶ 12 (Affidavit of Kelly Bannevans). Based upon the clear language of the commission plan, Plaintiff was not entitled to the second 50% commission on the AurGroup account, because it was not "due" to be paid to him until after his termination. See APJ Assoc., Inc. v. North American Philips Corp., 317 F.3d 610, 616 (6th Cir. 2003) (contract controls duty to pay post-termination commissions); Clark, 77 F. Supp 2d at 843

---

[1] The court notes that Plaintiff's testimony on this is not dispositive, because the interpretation of the plan is a question of law.

-6-

(same).[2]

Plaintiff claims that Open Solutions had a "past practice" of paying the second 50% commission on accounts post-termination, which demonstrates that Plaintiff is entitled to such a commission. A company's "past practice" is only relevant, however, "if the time when the commission is due cannot be determined by a contract between the principal and sales representative." M.C.L. § 600.2961(3). In light of the unambiguous commission plan, any "past practice" by Open Solutions, assuming such a practice exists, is not relevant.

## II.   Michigan Sales Representatives' Commission Act

Plaintiff also has a claim under the Michigan Sales Representatives' Commission Act. The statute does not however, provide relief for Plaintiff "absent a showing that Defendant failed to pay commissions owed under the parties' Agreement." Clark, 77 F. Supp. 2d at 852 (citing Flynn v. Flint Coatings, Inc., 230 Mich. App. 633 (1998)); APJ Assoc., 317 F.3d at 616. The statute provides a remedy for failure to pay commissions, but does not "create a new obligation or impose a new duty" that Defendant would not have under the parties' agreement. Id. Accordingly, since Plaintiff is not entitled to commissions under the parties' commission plan, he is not entitled to relief under the SRCA.

Plaintiff also contends that the SRCA essentially voids the part of the commission plan that precludes payment of post-termination commissions. The statute provides: "A provision in a contract between a principal and a sales representative purporting to waive any right under this section is void." M.C.L. § 600.2961(8). The statute does not impose a duty on principals to pay

---

[2] Likewise, if the SRTG order had "closed" prior to Plaintiff's termination, Plaintiff would nonetheless not be entitled to the second 50% commission on that account, because it "went live" in January 2005, well after his termination. See Ex. 7 at ¶ 12.

post-termination commissions, however. The statute specifically states that the "terms of the contract between the principal and sales representative shall determine when a commission becomes due." M.C.L. § 600.2961(2). The statute simply provides a remedy for a principal's failure to pay commissions "when due." See APJ Assoc., 317 F.3d at 615-16 (SRCA does not create new duty or supersede agreement of the parties regarding post-termination commissions).[3] In this case, Open Solutions paid the commission due to Plaintiff, so the SRCA is not implicated.

## III.     Procuring Cause Doctrine

Plaintiff also claims that his is entitled to post-termination commissions based upon the "procuring cause" doctrine. See Reed v. Kurdziel, 352 Mich. 287 (1958). Under this doctrine, a sales representative may be entitled to post-termination commissions if he was the "procuring cause" of the sale. This doctrine does not, however, override the express agreement of the parties regarding post-termination commissions. See Clark, 77 F. Supp. 2d at 847-49 ("Upon surveying the relevant case law. . . the Court finds nothing in the "procuring cause" doctrine that would require Defendants to pay any commissions beyond those called for in the parties' written Agency Agreement."); APJ Assoc., 317 F.3d at 616 ("A manufacturer's representative firm may only obtain an award as the procuring cause of post-termination sales where the written

---

[3] Plaintiff relies on Walters v. Bloomfield Hills Furniture, 228 Mich. App. 160, 577 N.W.2d 206 (1998) for the proposition that a sales representative cannot agree to forgo post-termination commissions. In Walters, the sales representative contended that the parties initially orally agreed that he would be paid post-termination commissions. The sales person later signed a letter stating that he would not be entitled to post-termination commissions. The Michigan Court of Appeals found the subsequent letter to be an impermissible waiver of the sale representative's rights under the SRCA. This result is contrary to subsequent case law (see Clark and APJ Associates) and the language of the statute that provides that the parties' agreement controls when commissions are due. Moreover, the "logic and implications" of this decision has been questioned by commentators. See Steven M. Wolock, Michigan's Sales Representative Act Revisited, 79 Mich. B. J. 1532 (Nov. 2000).

agreement is silent."). In this case, the commission plan expressly precludes the payment of post-termination commissions. Accordingly, the "procuring cause" doctrine does not provide a claim for relief for Plaintiff.

### IV.     Breach of Implied Contract

Plaintiff's breach of implied contract claim also fails, given the fact that the parties had an express agreement governing payment of commissions. "An implied contract cannot be enforced where the parties have made an express contract covering the subject matter." Scholz v. Montgomery Ward & Co., 437 Mich. 83, 93, 468 N.W.2d 845 (1991).

### ORDER

For the forgoing reasons, IT IS HEREBY ORDERED that Plaintiff's June 29, 2006 motion for partial summary judgment is DENIED.

IT IS FURTHER ORDERED that Defendant's August 7, 2006 motion for summary judgment is GRANTED.

s/John Corbett O'Meara
UNITED STATES DISTRICT JUDGE

Dated: September 25, 2006

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, September 29, 2006, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager